Rockingham
No. 91-465

THE STATE OF NEW HAMPSHIRE

v.

ROBERT WOODSUM

May 14, 1993

*Jeffrey R. Howard*, attorney general (*Amy Vorenberg*, assistant attorney general, on the brief and orally), for the State.

*Timothy M. Landry*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. A jury in Superior Court (*Dalianis*, J.) found the defendant, Robert Woodsum, guilty on two counts of felonious sexual assault, for having had sexual contact twice with a female victim under the age of thirteen. *See* RSA 632-A:3, III (1986). On appeal, the defendant argues that the trial court's exclusion from the evidence of his rejection of a lenient plea offer violated New Hampshire Rules of Evidence 408 and 410 and his right under part I, article 15 of our State Constitution to present all favorable proofs. We affirm.

The defendant's conviction was based on evidence that he had sexual contact with his five-year-old daughter in March and May 1986. Prior to trial, the State made an offer in the course of plea negotiations that it later characterized as "extraordinarily beneficial" to the defendant. The State offered to *nol pros* the felony counts, to allow the defendant to plead guilty to two misdemeanor charges of simple assault, and to recommend a sentence of two years at the house of corrections, deferred, contingent on the defendant's good behavior and pursuit of counseling. The defendant rejected the offer.

The defendant filed a motion *in limine* to admit as proof of his consciousness of innocence his rejection of the lenient offer and his willingness to risk up to fourteen years in prison if a trial were to result in convictions on both felony charges. The trial court denied the motion and excluded the evidence.

■ The defendant argues on appeal that the exclusion of this evidence violated New Hampshire Rules of Evidence 408 and 410, as well as his right to produce all favorable proofs under part I, article 15 of the State Constitution. At the outset, we note that the trial court's conduct could not be construed as a *violation* of Rules 408 and 410. These rules do not compel the result that the defendant seeks. Rule 408 renders inadmissible "[e]vidence of conduct or statements" made in negotiations to compromise a claim, but expressly "does not require exclusion when the evidence is offered for a purpose other than the proof of liability for or invalidity of the claim or its amount . . . ." N.H. R. Ev. 408. Rule 410 provides that statements made during plea discussions are generally inadmissible "*against the defendant*" who participated in the discussions. N.H. R. Ev. 410 (emphasis added); *see also* 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 410[05], at 410–43 to –44 (1992). Despite the defendant's suggestion to the contrary, we conclude that neither Rule 408, nor Rule 410, is express authority for the admission of the rejection of a plea offer.

The essence of the defendant's argument on appeal is that the trial court's exclusion of this evidence violated part I, article 15 of the State Constitution. The defendant contends that his rejection of an "extraordinarily beneficial" plea offer is proof of his consciousness of innocence, and that the State Constitution required its admission.

■ This issue implicates significant policy considerations. Plea bargaining is an important component of our system of criminal justice. *See Blackledge v. Allison*, 431 U.S. 63, 71 (1977); *see generally* Parodi, *The Roles of Participants in Negotiated Pleas*, 19 N.H.B.J.

321, 321–22 & n.7 (1978). Plea bargaining saves the State and any witnesses the burdens of a trial and may result in a more timely disposition of charges pending against a defendant. *See Blackledge,* 431 U.S. at 71; R. MCNAMARA, 2 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 751, at 154–55 (2d ed. 1991). To encourage a candid dialogue between the State and a defendant, and to facilitate a mutually beneficial resolution of charges, statements made during plea negotiations are generally inadmissible against the defendant in any subsequent civil or criminal proceeding. *See* N.H. R. EV. 410; *United States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir. 1978).

The defendant would have us allow the admission of a rejected plea offer in a subsequent criminal trial because the rejection is probative of the accused's consciousness of innocence. Confronting analogous facts and a similar argument, the Ohio Court of Appeals concluded that

> "the rule sought by defendant would have a serious and perhaps devastating effect on the use of plea bargaining as a device to accomplish . . . legitimate purposes. If the prosecutor must bargain with a defendant whose responses are framed with an eye toward their self-serving use at trial, we see little profit to be anticipated from their discussions, and little incentive to begin the process. The essence of plea bargaining is obviously *negotiation,* and a precondition of successful negotiations is an assurance of confidentiality which will encourage the candid give-and-take essential to reaching an agreeable compromise. Destroy confidentiality, and negotiators tend to make speeches and assume postures, tendencies inherently inimical to compromise."

*State v. Davis,* 70 Ohio App. 2d 48, 51, 434 N.E.2d 285, 287–88 (1980); *accord United States v. Verdoorn,* 528 F.2d 103, 107 (8th Cir. 1976); *State v. Pearson,* 818 P.2d 581, 583 (Utah Ct. App. 1991).

The defendant argues that such public policy concerns are overstated. Conceding that the rejection of a plea offer will not generally be relevant to a defendant's mental state but will merely reflect a counselled assessment of the State's case, he contends that his is the rare case in which a defendant has rejected a highly beneficial offer, and that this is proof of his innocent state of mind. The defendant argues that the State may simply require defendants in similar, rare cases in the future to sign waivers of any right to introduce rejected, highly beneficial plea offers as evidence. The State's response to this

argument is that competent prosecutors will simply require such waivers in all cases, thus adding a new layer of paperwork to the process and undoubtedly expanding pretrial litigation whenever such a waiver was not obtained.

We need not delve further into these policy arguments and possibilities to extract a rule, because we are able to reach a decision as a matter of law. Part I, article 15 guarantees defendants "a right to produce all proofs that may be favorable" to the defense. As the defendant concedes, this right is not absolute. There is no right under part I, article 15 to introduce evidence that will have little effect other than to confuse the issues or confound the jury, for such evidence is not competent, favorable proof.

The relevance of the evidence and its potential for confusing the issues or misleading the jury are important considerations in assessing whether the rejection of a beneficial plea offer could ever be "favorable" proof. Many inferences follow from a defendant's decision to exercise his or her right to a jury trial, rather than to accept a plea offer. "A plea rejection might simply mean that the defendant prefers to take his chances on an acquittal by the jury, rather than accept the certainty of punishment after a guilty plea." *United States v. Biaggi*, 909 F.2d 662, 691 (2d Cir. 1990), *cert. denied,* — U.S. —, 111 S. Ct. 1102 (1991). An "extraordinarily beneficial" plea offer is especially likely to induce a defendant to risk a trial, regardless of his or her guilt or innocence, for the offer of a beneficial plea may indicate that there are problems with the State's case, such as a key witness's disappearance, refusal to cooperate, or reluctance to testify.

It is also plausible to infer from the rejection of a beneficial plea offer, as the defendant argues, that a defendant believes he or she did not commit the crime. *Cf. id.* at 690 (jury may infer from defendant's rejection of offer of immunity that defendant lacked guilty knowledge); 2 J. WIGMORE, EVIDENCE § 293, at 232 (Chadbourn rev. 1979). This belief is, however, only marginally relevant to the issues in any criminal trial. Every criminal trial begins with a recitation of the defendant's plea of not guilty to the charges. The rejection of a plea offer is, in effect, nothing more than a prior statement consistent with the defendant's plea at trial, and thus adds little to the information before the jury. *See United States v. Greene*, 995 F.2d 793, 798 (8th Cir. 1993). Furthermore, a defendant's posture in plea negotiations at a date after the alleged offense, reflecting his or her counselled decision to seek a jury's acquittal, is at best weak evidence of the defendant's state of mind at the time of the alleged crime, and is not

relevant to any other element of a chargeable offense. *See Pearson*, 818 P.2d at 584 n.6.

Set against the marginal relevance of the rejection of a plea offer is the great likelihood that its admission will draw extraneous, misleading information into a criminal trial. Introducing evidence of a defendant's rejection of a lenient plea offer inevitably invites an exploration of such collateral matters as the prosecutor's reasons for making the offer, *see Davis*, 70 Ohio App. 2d at 51, 434 N.E.2d at 288, or the defendant's motives for rejecting it, *see Greene*, 995 F.2d at 799. *See also* N.H. R. Ev. 410(4)(i) & reporter's notes. A jury may be led far afield by such evidence, for "[t]he considerations involved in plea bargaining are infinitely variable and complex." *Davis*, 70 Ohio App. 2d at 51, 434 N.E.2d at 288.

> "[C]onsiderations may include: the seriousness of the offense, the availability or suitability of lesser included offenses, the record of the accused, the quality and quantity of the evidence on both sides, the availability and cooperativeness of witnesses or accomplices, unresolved legal issues, [and] probable length of trial and difficulty of trial preparation . . . ."

*Id.; see also United States v. Collins*, 395 F. Supp. 629, 633 (M.D. Pa.), *aff'd*, 523 F.2d 1051 (2d Cir. 1975), *cert. denied*, 423 U.S. 1060 (1976); *see generally* Parodi *supra*. In this case, for example, counsel for the State argued in a pretrial hearing that one reason why the State tendered such an "extraordinarily beneficial" offer had "to do with the victim's current mental state which would have to be the result of expert testimony," a possible reference to the victim's trial testimony that she sometimes hears voices inside her head. The testimony of experts or other witnesses addressing the State's divers reasons for offering a beneficial plea agreement has grave potential for confusing the issues and misleading the jury.

 Because there is little, if any, probative value in the rejection of a plea offer, while there is invariably a high risk that its admission would infuse extraneous, confusing issues into a trial, we conclude as a matter of law that evidence of a defendant's rejection of a plea offer is not admissible in the ensuing criminal trial. Consequently, we hold that the trial court did not err in excluding the evidence.

*Affirmed.*

All concurred.