2003 UT App 79

**STATE of Utah, Plaintiff and Appellee,**

v.

**Korry Barlow SMEDLEY, Defendant and Appellant.**

**No. 20020171–CA.**

Court of Appeals of Utah.

March 20, 2003.

David V. Finlayson and Linda M. Jones, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Joanne C. Slotnik, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

DAVIS, Judge.

¶ 1 Defendant Korry Barlow Smedley appeals from conviction of four counts of Aggravated Sexual Abuse of a Child in violation of Utah Code Ann. § 76–5–404.1(3) (1999). We affirm.

## BACKGROUND

¶ 2 In August 2000, D.B. called the police and alleged that Defendant had improperly touched her daughters, S.B. and K.B. After a detective (Rackley) interviewed S.B. and K.B., Rackley and another detective interviewed Defendant.

¶ 3 At the outset of the interview, one of the detectives read Defendant his rights under *Miranda* and Defendant waived his rights. Rackley then informed Defendant that he was a suspect in a sexual abuse case involving S.B. and K.B. Defendant responded that "he [had] never done anything to [S.B. and K.B.]" and asked several times "what kind of a deal he could get if he pled guilty," and "what [would] the penalty . . . be?" Defendant stated that "he didn't want [S.B. and K.B.] to have to testify, but he just needed to know what kind of penalties this would come with before he would . . . talk . . . any further."

¶ 4 During the interview, the detectives did not tell Defendant what the charges could be, discuss penalties or punishment, or indicate that they wanted to or could make a deal with Defendant. Rather, the detectives told Defendant that they did not "make deals with people, that's not our job, that's not our position." They told Defendant they wanted "to talk about the case . . . to know . . . what happened." [1]

¶ 5 Following the interview, Defendant was charged with four counts of aggravated sexual abuse of a child. During Defendant's first trial, which ended in a mistrial, Rackley testified that Defendant denied that he had sexually abused S.B. and K.B. and then made several inquiries about a deal. Defendant objected that Rackley's testimony was irrelevant as Defendant's inquiries were not admissions of guilt. The trial court overruled Defendant's objection, noting that Defendant's inquiries were admissions against interest "and/or [statements] made when he's

told that any statement you make can and will be [used against you in court]."

¶ 6 Before the jury was seated in Defendant's second trial, Defendant "renewed" his objection that testimony regarding his inquiries about a deal was not relevant. The trial court again overruled the objection. At the conclusion of the second trial, the jury convicted Defendant as charged. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Defendant argues Rackley's testimony that he inquired about a deal was inadmissible under rules 410 and 408 of the Utah Rules of Evidence. The State responds that at trial Defendant failed to specifically object to the testimony under rules 410 and 408 and therefore Defendant failed to preserve the issue of inadmissibility under these rules for appeal. We review the adequacy of Defendant's objection de novo.

¶ 8 Defendant also argues Rackley's testimony was irrelevant and was therefore inadmissible under rules 401 and 402 of the Utah Rules of Evidence. "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194, *cert. denied*, —— U.S. ——, 123 S.Ct. 859, 154 L.Ed.2d 805 (2003).

## ANALYSIS

### I. Preservation

¶ 9 Defendant argues his relevance objection to Rackley's testimony that he inquired about a deal was sufficient to raise the inadmissibility of the testimony under rules 410 and 408 of the Utah Rules of Evidence. Defendant therefore argues he preserved the issue for appeal.

¶ 10 "[I]n order to preserve a contention of error in the admission of evidence for appeal, a defendant must raise a timely objection to the trial court in clear and specific terms." *State v. Larsen*, 828 P.2d 487,

---

1. Defendant maintains that he inquired about a deal several times before the detectives indicated they could not make a deal. However, during Defendant's first trial, Rackley testified that after Defendant denied the allegations that he had sexually abused S.B. and K.B. and asked about the deal he could get if he pleaded guilty, she told him that she could not make deals. Rackley further testified that when Defendant again inquired about what kind of deal he could get, she "continued to tell [Defendant] that [she could not] make any kind of deals."

495 (Utah Ct.App.1992) (alteration in original) (quotations and citation omitted), *aff'd,* 865 P.2d 1355 (Utah 1993). "Importantly, the grounds for the objection must be distinctly and specifically stated." *State v. Winward,* 941 P.2d 627, 633 (Utah Ct.App.1997) (quotations and citations omitted). "Where there [is] no clear or specific objection . . . and the specific ground for objection [is] not clear from the context . . . the theory cannot be raised on appeal." *Larsen,* 828 P.2d at 495 (alterations in original) (quotations and citation omitted). Moreover, it is well settled that a defendant who objects to the admission of evidence has the burden to "make certain that the record [he] compile[s] will adequately preserve [his] arguments for review. . . . One who fails to make a necessary objection or who fails to insure that it is on the record is deemed to have waived the issue." *State v. Davis,* 965 P.2d 525, 537 (Utah Ct.App.1998).

¶ 11 The trial record does not contain specific and distinct objections that Defendant's inquiries about a deal involved "plea discussions" within the parameters of rule 410 [2] or "compromise negotiations" within the parameters of rule 408.[3] Nor does the record show that the trial court considered whether the testimony was inadmissible under rules 410 and 408.[4]

¶ 12 However, Defendant argues his relevance objection was based on policy concerns behind rules 410 and 408—i.e., that

---

**2.** Moreover, based on the record before us, it does not appear that Defendant's inquiries about a deal would fall within rule 410. In relevant part, rule 410 provides:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
> . . . .
> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

"Rule 410(4) does not cover plea negotiations with public officials other than prosecuting attorneys." Utah R. Evid. 410 advisory committee's note; *see United States v. Grant,* 622 F.2d 308, 313 n. 3 (8th Cir.1980) ("Fed.R.Evid. 410[was] never intended to extend to discussions between law enforcement officials and the defendant. Rather, as the [advisory committee's n]ote emphasizes, these . . . discussions are better analyzed under the established law governing interrogations by law enforcement officials—i.e., the law of the voluntariness of confessions."). Because in the present case there was nothing before the trial court suggesting an agency relationship between the prosecuting authority and Rackley for the purposes of the application of rule 410, we do not address the issue.

**3.** In relevant part rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. . . . This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Although the Utah Supreme Court has held that rule 408 does not bar from criminal proceedings admissions and statements made at a conference to settle a civil claim, *see State v. Mead,* 2001 UT 58, ¶ 46, 27 P.3d 1115, Utah appellate courts have not addressed whether a criminal defendant's attempt to open plea discussions is an attempt to "compromise a claim" or involves "compromise negotiations" under rule 408. Other jurisdictions appear to be split on the issue. *Compare United States v. Graham,* 91 F.3d 213, 218–19 (D.C.Cir.1996) (noting "[r]ule 410 (rather than [r]ule 408) strikes the balance between the interest in admitting all relevant evidence . . . and the interest in resolving disputes without litigation" in concluding rule 408 "does not address the admissibility of evidence concerning negotiations to 'compromise' a criminal case") *and United States v. Baker,* 926 F.2d 179, 180 (2d Cir.1991) (concluding rule 408 applies only to civil litigation) *with United States v. Verdoorn,* 528 F.2d 103, 107 (8th Cir.1976) (suggesting "government proposals concerning pleas should be excludable" under the rationale of rule 408 of the Federal Rules of Evidence).

**4.** During the first trial, Defendant objected to Rackley's testimony in an unrecorded side bar conference. Subsequently, Defendant made a record of his objection. Defendant noted that he objected to the testimony "based on irrelevance at the time, based on the fact that it was not an admission of guilt of this crime, it was a typical question that detectives talk with clients a lot about, whether or not they'll go easier on them if they talk now and that sort of thing. [It was] not an admission of guilt." The trial court noted, "I [did not] find it was an admission of guilt at all,

offers to compromise are not relevant evidence.[5] *See* Fed.R.Evid. 408 advisory committee's note ("As a matter of general agreement, evidence of an offer to compromise a claim is not [admissible]" because "[t]he evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position."). Therefore, he argues the inadmissability of the testimony under rules 410 and 408 was preserved for appeal.

■ ¶ 13 We conclude Defendant's relevance objection in this case was insufficient to raise the inadmissibility of the testimony under rules 410 and 408. At trial, Defendant did not argue that his inquiries involved an offer to compromise a criminal case and therefore they were not relevant. Rather, Defendant argued that the inquiries were "typical question[s] that detectives talk with clients ... about, whether or not they'll go easier on them if they talk now,"[6] and were not admissions of guilt, and therefore they were not relevant. Moreover, "[r]ules 404 to 412 [of the Utah Rules of Evidence] are crystallizations of policies concerning the balance between probative value and costs to society or truth-finding or admitting evidence.... Rules 404 to 412 are designed to deal with large classes of cases through *mandatory exclusion*, while rule 403" as well as rules 401 and 402 involve "discretionary exclusion." Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* 4–27 (1996) (emphasis added).

¶ 14 Based on the record before us and for the foregoing reasons, we conclude Defendant's objection was insufficient to raise the issue of whether Rackley's testimony about Defendant's inquiries was inadmissible under rules 410 and 408. *See Larsen,* 828 P.2d at 495. Accordingly, we conclude Defendant waived the issue of inadmissibility of the testimony under these rules.

## II. Relevancy

■ ¶ 15 Defendant argues Rackley's testimony about his inquiries into a deal was not relevant as his inquiries were not admissions of guilt. "Evidence is relevant if it

---

[it was] an admission against interest and/or [a] statement made when he's told that any statement you make can and will be [used against you in court]." Thus, the trial court's focus was clearly on hearsay and voluntariness, not on rules 410 and 408.

During the second trial, Defendant renewed his objection based on relevance, the prosecutor responded that the testimony was relevant as an admission, and the trial court noted defense counsel's objection for the record.

5. Defendant also argues the testimony should be excluded because allowing evidence of an accused's inquiry to detectives about the possibility of a plea deal will discourage plea bargaining. *See, e.g., People v. Ford,* 59 Mich.App. 35, 228 N.W.2d 533, 538 (1975) (noting prior to adoption of rule 410, "[a]s a general rule, offers by an accused to plead guilty are inadmissible on the grounds that plea bargaining is to be encouraged for the purpose of achieving the effective administration of criminal justice and that admissibility of [such offers] would discourage the practice"). Defendant further argues "[f]airness dictates that discussions between [D]efendant and the [detectives as part of the prosecution team] should be excluded from evidence." Nothing in the record shows that these policy concerns were raised before the trial court. *Cf. Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.,* 645 P.2d 667, 672 (Utah 1982) (declining to address public policy argument that was not submitted to trial court).

6. The State maintains that Defendant made this "typical question" objection in the first trial and had to renew the objection during the second trial to preserve the objection for appeal. *See State v. Lloyd,* 662 P.2d 28 (Utah 1983) (per curiam) (concluding defendant was required to make a motion in limine or object to admission of evidence in second trial to preserve claim for appeal although defendant had made a motion in limine that was denied before first trial that ended in mistrial); *cf. State v. O'Neil,* 848 P.2d 694, 698 (Utah Ct.App.1993) (concluding that following mistrial, law of case doctrine did not limit state and defendant from offering new evidence, motions, and objections; noting that "[i]f the result were otherwise, the evidentiary problems on ... retrial would be insurmountable").

Neither the State nor Defendant note that under amended rule 103 of the Utah Rules of Evidence, effective before Defendant's second trial, "[o]nce the [trial] court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Utah R. Evid. 103(a)(2). However, in the present case, Defendant's "typical question" objection did not raise whether the inquiries about a deal involved plea discussions within the parameters of rule 410 or compromise negotiations within the parameters of rule 408. Thus, we do not address the extent to which Defendant was required to renew the objection in the second trial following the mistrial in the first trial.

possesses 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *State v. Martin,* 2002 UT 34, ¶ 31, 44 P.3d 805 (quoting Utah R. Evid. 401). "[T]he standard for determining the relevancy of the evidence is 'very low,' and even evidence with the ' "slightest probative value" ' is relevant." *Id.* at ¶ 34 (quoting *State v. Jaeger,* 1999 UT 1, ¶¶ 12, 16, 973 P.2d 404 (quoting Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* 4–2 (1996))). Where evidence "has no probative value to a fact at issue, it is irrelevant and is inadmissible under rule 402." *Jaeger,* 1999 UT 1 at ¶ 13, 973 P.2d 404; *see* Utah R. Evid. 402.

¶ 16 Defendant argues his inquiries about a deal do not make the State's allegations of sexual abuse or his denial of such abuse more or less probable. Defendant emphasizes that he told the detectives that he sought a deal to protect S.B. and K.B. from having to testify at trial.[7]

¶ 17 We disagree that Defendant's inquiries about a deal lack probative value. *See* Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* 4–4 & n. 13, 4–6 to –7 n. 18, (1996) (indicating accused's willingness to enter into plea bargain has slight probative value but that recourse should be had to rule 403 because likelihood of misuse is large);[8] *cf.* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 408.03(4) (Joseph M. McLaughlin ed., 2d ed.2002) (noting that although offers to compromise civil cases are rejected by courts "on the grounds of irrelevancy . . . [as] motivated by a desire to 'buy peace[,]' . . . such a

motive often co-exists with other factors which indicate a belief in the validity of the claim asserted. . . . Moreover, evidence of offers of compromise—whatever the motive—meets the modern requirements of relevancy.").

¶ 18 In the present case, the detectives informed Defendant that he was a suspect in a sexual abuse case involving S.B. and K.B., not that any charges had been or were going to be filed. Defendant denied sexually abusing S.B. and K.B. and then immediately proceeded to inquire about what kind of deal he could get and what the penalties were before he would "talk . . . any further." In context, Defendant's inquiries into a deal and penalties are relevant as to his denial of the allegations of sexual abuse and his consciousness of the allegations' substance.

¶ 19 Defendant relies on *State v. Pearson,* 818 P.2d 581 (Utah Ct.App.1991), to support his contention that his inquiries about a deal were not relevant. In *Pearson,* this court affirmed a trial court's ruling that rule 410 barred a defendant from introducing evidence of a prosecutor's plea offer. *See id.* at 582. In dicta, this court "seriously question[ed] whether plea negotiations are relevant evidence in a criminal prosecution" and noted "[t]he negotiation strategy and positioning of either the defense or the prosecution is not evidence of the elements of the crime charged." *Id.* at 584 n. 6.

¶ 20 The present case is distinguishable from *Pearson.*[9] In the present case, Defendant did not argue at trial that his inquiries involved plea negotiations or positioning of his defense. Further, the record indicates the detectives were investigating the sexual

7. This aspect of Defendant's inquiries was duly recounted by Rackley. Thus, the jury learned of Defendant's apparently selfless motive even as it learned of his interest in a plea deal.

8. Although the day after Defendant made his record on the grounds of relevance during the first trial, he noted that the testimony about his inquiries was also prejudicial, Defendant "did not specifically object to the [testimony] on the ground that the probative value of the usage was substantially outweighed by the potential for unfair prejudice or confusion of the issues." *State v. Larsen,* 865 P.2d 1355, 1363 n. 12 (Utah 1993); *see* Utah R. Evid. 403; *State v. DeAlo,* 748 P.2d 194, 199 (Utah Ct.App.1987) ("[W]here evidence [is] shown to have supported only conjectural

inferences which had little probative value, or where no evidence was adduced that showed that a fact had any causal connection with the [crime charged], reversal may be appropriate on grounds that the improperly admitted evidence could only have served to confuse and mislead the jury or to prejudice the outcome of the case." (second and third alternations in original) (quotations and citation omitted)). Additionally, although on appeal Defendant alludes to rule 403, which presupposes relevance, Defendant focuses on the relevance of the testimony under rules 401 and 402.

9. In *Pearson,* this court relied upon *State v. Davis,* 70 Ohio App.2d 48, 434 N.E.2d 285 (1980). In *Davis,* the court distinguished cases

abuse allegations when they interviewed Defendant. Defendant did not offer to plead to charges that had been filed. Rather, Defendant inquired about the possibility of a deal and about possible penalties before he would talk. In doing so, Defendant explained his motive was to spare S.B. and K.B. from having to testify, not that he acknowledged guilt. Thus, the *Pearson* dicta does not control our analysis.[10]

¶ 21 Because in context Defendant's inquiries about a deal were relevant to his denial of the sexual abuse allegations and his consciousness of the allegations' substance, we conclude the trial court did not abuse its discretion in admitting Rackley's testimony under rules 401 and 402.

¶ 22 Other jurisdictions have concluded that similar inquiries are admissible against an accused.[11] *See Moreland v. United States*, 270 F.2d 887, 890 (10th Cir.1959) (concluding accused's inquiry, " 'I am not admitting it or denying it, but what kind of a deal can I make,' " made to city police officers after federal arraignment, tended to incriminate accused and was admissible evidence if made voluntarily); *Commonwealth v. Calloway*, 313 Pa.Super. 173, 459 A.2d 795, 799 (1983) (concluding accused's statement that he had information he was willing to provide for a deal served as relevant indication of guilt); *cf. State v. Christian*, 245 S.W.2d 895, 897–98 (Mo.1952) (suggesting that defendant's inquiry, brought out on cross-examination, as to what would happen to him if he pleaded guilty after denying

involvement with robbery, was an admission). *But see United States v. Brooks*, 536 F.2d 1137, 1138 (6th Cir.1976) (concluding attempt to open plea bargaining with postal inspector was inadmissible), *superceded by Fed. R.Crim.P. 11(e)(6) as stated in United States v. Marks*, 209 F.3d 577, 582 (6th Cir.2000); *but cf. Hereford v. State*, 608 So.2d 439, 443–44 (Ala.Crim.App.1992) (concluding accused's offer to pay damages to avoid hassle of prosecution was inadmissible and noting general rule that accused's offer of compromise, even where made to law enforcement official during investigation, was not admissible unless accompanied by an express admission of guilt).

## CONCLUSION

¶ 23 We conclude that Defendant's relevance objection was insufficient to raise the issue of whether Rackley's testimony regarding his inquiries about a deal was inadmissible under rules 410 and 408. We therefore conclude Defendant waived the issue of inadmissibility under rules 410 and 408. We further conclude that the testimony was relevant under rules 401 and 402. Therefore, we affirm.

¶ 24 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and GREGORY K. ORME, Judge.

---

where an accused's offer to compromise assumes the form of " '[an] admission[ ] against interest' " and cases where an accused seeks to introduce evidence of plea negotiations initiated by a prosecutor. *Id.* at 287. Furthermore, in *Davis*, the court relied on rule 403 to affirm the exclusion of plea negotiations, rather than rules 401 and 402. *See id.* at 288 ("Stated simply, it is that the probative value, if any, of the evidence relating to [plea] negotiations is far outweighed by its possible prejudicial and misleading effect upon the jury." (citing Ohio R. Evid. 403)).

10. In addition to *Pearson*, we find that two other Utah decisions, decided before the controlling rules of evidence were enacted, are distinguishable from the present case. *See State v. Jensen*, 74 Utah 299, 279 P. 506, 508 (1929) (concluding general objection of irrelevancy, immateriality, and incompetency to testimony that defendant

had pleaded guilty, then withdrew his plea, was sufficient because testimony was inadmissible for any purpose); *State v. Hutchings*, 30 Utah 319, 84 P. 893, 895 (1906) (concluding that although defendant's admission that he offered to plead guilty to petit larceny and pay for property if burglary charge was stricken, was admissible, it was insufficient to sustain verdict).

11. Most modern cases address whether such inquiries about plea bargains are inadmissible under rule 410 and do not address the basic relevance of the inquiries. *See, e.g., United States v. Penta*, 898 F.2d 815, 817 (1st Cir.1990) (concluding accused's inquiries about what was going to happen to him if he cooperated were not barred by rule 410); *Hite v. State*, 718 So.2d 270, 271 (Fla.Dist.Ct.App.1998) (concluding accused's inquiry that might lead to plea offer was not within rule 410).